# In the United States Court of Federal Claims

|  |  |
|---|---|
| MARIA URBAN, | |
| *Plaintiff,* | |
| v. | No. 20-1600[1] |
| | (Filed: April 30, 2025) |
| THE UNITED STATES, | |
| *Defendant.* | |

*Michael Gerard Kane*, Cashdan and Kane, PLLC, Westfield, NJ, for Plaintiff.

*Kara Marie Westercamp*, Civil Division, United States Department of Justice, Washington, DC, for Defendant.

## OPINION AND ORDER

**LERNER,** *Judge*.

In 2020, Maria Urban filed this lawsuit alleging that her employer, the United States Postal Service ("Postal Service"), violated the Equal Pay Act ("EPA"). 29 U.S.C. § 206(d). *See* Compl., ECF No. 1. The Postal Service promoted Ms. Urban and two male counterparts into the same position in 2016. But it paid her significantly less based solely on her prior pay.

The Court stayed proceedings in the case to await the U.S. Court of Appeals for the Federal Circuit's decision in *Boyer v. United States*. 97 F.4th 834 (Fed. Cir. 2024), *reh'g en banc denied*. In *Boyer,* the Federal Circuit clarified that an employer cannot rely on prior pay as a factor "other than sex" to explain a wage disparity when raising an affirmative defense under the EPA, absent two exceptions. *Id.* at 843. An employer may lawfully consider prior pay if it (1) proves the prior pay itself was not based on sex or (2) relies on prior pay together with another factor that "assure[s] a factfinder" the prior pay was "not a proxy for sex." *Id.*

In light of *Boyer*, Defendant filed an Amended Motion for Summary Judgment. The Postal Service argued that while Ms. Urban established a prima facie case of wage disparity, it still met its burden to justify the disparity under *Boyer*. It raised the affirmative defense that the disparity between Ms. Urban's salary and her male colleagues' pay was based on "any other

---

[1] Given the Protective Order in place in this case, this Opinion was originally filed under seal on April 15, 2025 and the parties were given fourteen days to propose any appropriate redactions. *See* ECF No. 12; ECF No. 45. The parties did not propose redactions.

factor other than sex." Def.'s Am. Mot. for Summ. J. (hereinafter "Def.'s Mot.") at 20 (citing 29 U.S.C. § 206(d)(1)), ECF No. 37.  Ms. Urban filed a Response and Cross-Motion for Summary Judgment asserting that the United States failed to carry its affirmative defense or, alternatively, that the Postal Service's affirmative defense is pretextual.  Pl.'s Cross Mot. for Summ. J. (hereinafter "Pl.'s Mot.") at 1–2, ECF No. 39.  On February 26, 2025, the Court heard oral argument on the cross-motions.

Having considered the parties' arguments and the uncontroverted facts in the record, the Court finds Defendant did not rely on prior pay in either of the two permissible ways under *Boyer*.  First, the Postal Service neither inquired into whether Ms. Urban's prior pay was based on sex nor justified the wage disparity on the basis that her prior pay was not based on sex.  Second, the record establishes that Defendant relied on prior pay alone to justify the wage disparity instead of considering prior pay "together with other, non-sex-based factors."  *See Boyer*, 97 F.4th at 845.  Because the Postal Service relied on prior pay alone to justify the wage disparity and does not show that prior pay was not based on sex, the Court cannot find that Ms. Urban's prior pay was "not a proxy for sex."  *Id.* at 843.

Plaintiff also asserts she is entitled to a three-year statute of limitations for calculating damages because the Postal Service willfully violated the EPA.  Pl.'s Mot. at 2.  Defendant contends that a two-year statute of limitations applies because Plaintiff failed to state a valid claim in her Complaint that the alleged EPA violation was willful.  Def.'s Mot. at 30.  This Court holds that Plaintiff has raised willfulness in her Complaint.  But while Plaintiff provides convincing evidence that Defendant "showed reckless disregard of the requirements of the Act," which is sufficient to establish willfulness, the Court declines to decide the issue on summary judgment.  *See* 5 C.F.R. § 551.104.

Thus, the Court **DENIES** Defendant's Amended Motion for Summary Judgment.  The Court **GRANTS in part** and **DENIES in part** Plaintiff's Cross Motion for Summary Judgment.  If the parties do not reach a settlement, the case will proceed to a bifurcated trial on (1) willfulness and (2) damages.

## I.    Jurisdiction

Under the Tucker Act, the U.S. Court of Federal Claims has jurisdiction to hear certain monetary claims against the United States founded upon an Act of Congress and not sounding in tort.  28 U.S.C. §1491(a)(1).  The Tucker Act, however, "does not create any substantive right[s] enforceable against the United States for money damages[;] ... the Act merely confers jurisdiction upon it whenever the substantive right exists."  *United States v. Testan*, 424 U.S. 392, 398 (1976).  A plaintiff coming before this Court must identify a separate provision of law conferring a substantive right for money damages against the United States.  *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004).  "The Equal Pay Act serves as a money-mandating statute that provides a basis for this court to exercise jurisdiction pursuant to the Tucker Act."  *Jordan v. United States,* 122 Fed. Cl. 230, 238 (2015) (citing *Harbuck v. United States*, 378 F.3d 1324, 1330 (Fed. Cir. 2004)).  Thus, this Court has jurisdiction to hear Plaintiff's claim.

## II.    Facts

### A.    The Postal Service's Promotional Pay Policy

On June 18, 2015, the Postal Service revised its non-bargaining promotional pay policies. App'x to Am. Mot. for Summ. J. ("App'x") 7, 63, 87–89, ECF No. 38.[2]  The Postal Service amended the Employee and Labor Relations Manual ("ELM") to include additional pay increases when an individual's existing salary is significantly below the maximum salary for her new position and she is promoted by three or more Executive Administrative Schedule ("EAS") pay grades.  App'x 7–8, 381–82.  The EAS is the Postal Service's pay scale and sets minimum and maximum salaries for positions at each numerical grade.  The Postal Service admits that "at the time revisions were made . . . there was no assessment regarding the Equal Pay Act."  Pl.'s App'x 396 (detailing a supplemental response to a Rule 30(b)(6) deposition inquiry that is not in Defendant's appendix).

Upon being promoted, an internal hire's new salary is based on two factors that the salary setter inputs simultaneously into a promotional "pay calculator."  App'x 56, 67–68, 88 (Summary of Pay Calculator).  The first factor is the difference between an employee's existing salary and the maximum salary for her new position.  App'x 88, 113.  Under the revised 2015 rule in effect at the time of Ms. Urban's promotion, if the maximum salary for the new position is more than 20% higher than the employee's existing salary, the employee will receive a salary increase between 3% and 10%.  App'x 88.  And if the maximum salary for the new position is between 10% to 20% higher than the employee's existing salary, the employee will receive a pay bump between 3% and 8%.  *Id.*  If the maximum salary for the new position is less than 10% more than the employee's existing salary, the employee receives a salary boost of 3% to 5%.  *Id.*  Second, employees promoted by three grades receive an extra 3%, four or five grades an additional 5%, and six or more grades an added 8% increase.  App'x 88, 113.  However, no employee's salary can increase above the maximum salary for the new grade.  App'x 88.

The official setting the salary only inputs the employee's current salary, their current EAS grade level, and the EAS grade level of the promotional position into the pay calculator.  App'x 48.  The salary setter does not input any other information, including the number of years that the person has worked at the Postal Service or the nature of the job the individual holds at their grade level.  App'x 49.  The calculator automatically populates the minimum and maximum percentage increases for which the person is eligible.  App'x 69.  After the calculator determines the permissible range of salaries, the selecting official considers other factors, including relevant work experience, and decides which of the permissible percentage increases to recommend to management for approval.  App'x 57.

---

[2] Defendant filed the appendix under seal along with their Motion for Summary Judgment. Plaintiff filed a similar appendix with its Cross-Motion for Summary Judgment that contains additional record evidence produced through discovery.  Pl.'s Suppl. App'x to the Summ. J. Briefing (hereinafter "Pl.'s App'x"), ECF No. 39-1.

In 2016, selecting officials were permitted to request an exception and recommend a raise exceeding the maximum 10% allowed by the promotional pay calculator. App'x 8, 66, 310. Such a request could be granted on a case-by-case basis by the Postal Service's Compensation & Benefits Human Resources ("HR") department. App'x 8, 310. However, the policy limited pay increases to 25% within a fifty-two-week period. App'x 310.

**B.    Ms. Urban's and Her Male Counterparts' Promotions and Salary Determinations**

Ms. Urban began working at the Postal Service in 2004 as a rural carrier associate. App'x 21. From 2007 to 2013, she worked in a part-time, flexible position and was a member of the American Postal Workers Union. App'x 21, 374. Bargaining employees are not paid on the EAS scale but instead on a bargaining pay scale. App'x 21, 374–75. During that time, she was at a level 6 on the bargaining pay scale, and her base hourly wage was $25.11. App'x 375. In 2013, Ms. Urban started a non-bargaining unit position as a field sales representative, which was an EAS-17 position. App'x 23. Her salary was $52,731. App'x 376. At her deposition, Ms. Urban testified that she felt she was not slotted into the appropriate EAS grade at the time. App'x 23 ("[W]hen I was hired, they didn't slot me in properly."), 26 ("I was not slotted in properly in EAS and I was looking for a higher figure."). Ms. Urban stated that she thought the Postal Service should have considered her overtime pay, as well as her higher pay while on detail, in setting her EAS grade. App'x 32. But she was "repeatedly told" that conversion from bargaining pay to an EAS grade is always computed from base salary. *Id*. *See also* App'x 383 (ELM § 414.122). In 2014, Ms. Urban was promoted to EAS-19, with a salary of $57,039. App'x 24, 377. And by early 2016, Ms. Urban's salary was $58,180. App'x 130.

In late 2015, the Postal Service advertised newly created training instructor positions, including a role only open to current Postal Service employees in Edison, New Jersey. App'x 116–17. The positions were classified as EAS-20. App'x 116. The maximum salary for an EAS-20 position at that time was $90,535 and the minimum salary was $55,113. App'x 4, 130. David Colón, Manager for Customer Contact Content and Quality in Edison, was the selecting official for the Edison position, as well as for positions in Wichita, Kansas; Troy, Michigan; and Los Angeles, California. App'x 40, 264. Mr. Colón interviewed applicants, hired ten people across all locations, and set the pay for all individuals "[b]ased on the pay policies." App'x 40, 45.

Mr. Colón recalled explaining the promotional pay calculator to Ms. Urban and "refer[red] her to the pay policy page where the memo . . . [and] the non-bargaining pay calculator documents could be found." App'x 46. Ms. Urban stated that she told Mr. Colón during her interview that she felt she "wasn't slotted in properly" when she moved onto the EAS scale and was "looking for proper compensation for the position" because she was "at a very low end of the scale for EAS." App'x 25. Mr. Colón responded that "he could go up to as high as 10 percent," but Ms. Urban felt that "as management and with the pay ranges that they could do more than 10 percent when warranted." App'x 26. *See also* App'x 32 ("I was told afterwards that the 10 percent is the highest and it was based on my previous salary, which I felt was . . . once again not being slotted in properly."). According to Mr. Colón, he was not aware at the

4

time that he could have sought an exception to recommend up to a 25% increase, and he did not request an exception for any of the internal hires, including Ms. Urban. App'x 41, 49.

Mr. Colón promoted Ms. Urban and her male colleagues Alex Paulino and Richard Miller to the positions in Edison. App'x 118–125, 134–142, 148–154. Mr. Colón used the promotional pay calculator to determine the range of salaries he could offer Ms. Urban, Mr. Paulino, and Mr. Miller. App'x 48.

Mr. Colón inputted Ms. Urban's prior salary as a field sales representative, which was $58,180; her EAS-19 grade level; and the new EAS-20 grade level into the pay calculator. App'x 48–49. Because the maximum salary for the training instructor position was more than 20% greater than Ms. Urban's prior salary (55.61% greater) and she was not being promoted at least three pay grades, the calculator determined Ms. Urban was eligible to receive an increase of 3% to 10%, or an annual salary between $59,925 and $63,998. App'x 130. *See also* Tr. at 22 (Defendant stating that for Ms. Urban, only "prior pay was the input for the calculator").

Prior to his promotion, Mr. Paulino was a Supervisor in a Customer Care Center, also an EAS-19 position, and earned $70,157. App'x 149, 157. Because the maximum salary for the new position was 29% greater than his prior salary and he would move up one grade, the promotional pay calculator determined an allowable salary increase of 3% to 10%, or an annual salary between $72,262 and $77,173. App'x 157.

Before his promotion, Mr. Miller was an Operations Program Specialist, an EAS-17 position, earning $76,997. App'x 4, 135, 145. Because the maximum salary for the EAS-20 position was 18% greater than his prior salary, the promotional pay calculator determined Mr. Miller could receive a salary increase between 3% and 8%. App'x 145. He also automatically received a 3% increase because he would move up three grades. *Id.* Thus, the pay calculator determined Mr. Miller was eligible for an annual salary between $81,617 and $85,467. *Id.*

In sum, after using the three individuals' prior salary, their prior grade level, and the training instructor position's grade level, the pay calculator set Ms. Urban's highest allowable salary at $63,998. App'x 130. This was $8,264 less than Mr. Paulino's minimum salary and $17,619 less than Mr. Miller's minimum salary for the same position. App'x 130, 145, 157. Even if Mr. Colón had requested an exception to offer Ms. Urban the maximum 25% raise permissible under the revised policy (a salary of $72,725), she still could not have matched Mr. Miller's salary and would only have matched Mr. Paulino's salary if he was offered the minimum 3% raise. App'x 310.

Once Mr. Colón established the permissible salary ranges for the three individuals, he set each applicant's salary within that percentage range. App'x 47. He then recommended his chosen number to his manager for approval. *Id.* To do so, Mr. Colón relied on the applicant's "experience as well as the interview process" and their resume. App'x 56–57. Mr. Colón recommended Ms. Urban receive what he then believed, incorrectly, was the maximum 10% increase. App'x 57. He testified that this decision was based on her "demonstrated prior experience working specifically in a Montessori environment with instructional design and adult learning principles" and her "very good grasp of the ability to deliver content." *Id.* His

interview notes highlighted her "very good demeanor," "good interaction," "good use of technology," and her facilitation skills.  App'x 127–28.

Mr. Colón recommended Mr. Paulino receive only an 8% increase because he had "very good knowledge of the Customer Care Center operations," but had less "experience in terms of the facilitation demonstrated through" his resume.  App'x 57.  *See also* App'x 47, 154–55.  Mr. Colón recommended the maximum allowable salary for Mr. Miller because he "had rolled out very large national programs" and had "demonstrated experience with facilitation in large settings."  App'x 57.  *See also* App'x 142–43.

Mr. Colón's manager, Maryellen Clarke, approved all three salary recommendations.  App'x 303–04.  Accordingly, Ms. Urban, Mr. Paulino, and Mr. Miller were offered different salaries for the same position.  App'x 40, 131–32, 146–47, 158–59.  Mr. Colón attested that he also "called [Ms. Urban] and made the offer, explaining that the proposed salary was the maximum allowable under policy."  App'x 264–65.

Mr. Colón testified that he was aware he offered Ms. Urban a lower salary than her two male counterparts and that the difference was "based on their current salary."  App'x 42.  But he did not have any concerns about violating the EPA because the salary offers were based on "Postal Service pay policies."  App'x 43.  At the time, he believed the EPA required that "employees who are doing like work should be paid similarly."  *Id.*  He also stated that he did not know if Ms. Urban's salary before her promotion was based on sex, and he "had no dealings with her prior salary."  App'x 44.  Ms. Urban accepted the training instructor position and started her new assignment on February 20, 2016.  App'x 131–32.

### C.    Equal Employment Opportunity Investigation

Ms. Urban testified that she first learned she was making less than her two male colleagues about nine months to a year into her new position after taking a mandatory Notification and Federal Employee Antidiscrimination and Retaliation ("No-FEAR") training.  App'x 28.  Following the training, she used a public website that publishes Postal Service employee salaries and discovered that her two male counterparts "were earning substantially more than" she was.  App'x 29.  In March 2018, Ms. Urban began the Equal Employment Opportunity ("EEO") complaint process.  App'x 30, 245.  Ms. Urban had an initial telephone interview with an EEO counselor, who documented that Ms. Urban was "requesting a salary increase to $80,000 per year, equal compensation for equal duties, level, etc. as newly created positions were all created equally" and "pay placement should be slotted accordingly."  App'x 216.  Ms. Urban felt that $80,000 was a "middle ground" between her two male colleagues' salaries.  App'x 31.

Mr. Colón and Ms. Clarke both submitted affidavits as part of the EEO investigation.  App'x 289–313.  Mr. Colón stated that Ms. Urban had "indicated to him that she felt her salary was 'low' and inquired about what her salary would be if she was selected."  App'x 264.  He explained the pay policies to her and said he would do what he could "within his control to address her 'low' salary."  *Id.*  Ms. Clarke stated that she "concurred in the setting of [Ms. Urban's] promotional pay amount because David Colón followed the policy and process

provided by the Postal Service Human Resources group to determine [Ms. Urban's] salary." App'x 265. Ms. Clarke recalled that Ms. Urban "was afforded the maximum amount allowed based on HR policy and her salary at the time of the offer." App'x 303. She explained that "promotional pay increases are determined by two factors: distance from the position's maximum salary and the number of grades being promoted." App'x 265.

The parties engaged in mediation through the EEO process but failed to reach an agreement. Compl. at 4; Def.'s Mot. at 25–26. Ms. Urban subsequently withdrew the EPA component of her EEO complaint and filed a Complaint in this Court. Compl. at 4.

## III.    Procedural Posture

Ms. Urban filed her Complaint on November 17, 2020. *See* Compl. The Postal Service filed an Answer on March 5, 2021. Answer, ECF No. 7. Fact discovery closed on July 14, 2022. ECF No. 22. As explained above, on March 16, 2023, Plaintiff filed a Consent Motion to stay briefing pending the Federal Circuit's resolution of *Boyer*, which the Court granted. Pl.'s Mot. to Stay, ECF No. 32; Order Staying Case, ECF No. 33.

After the *Boyer* decision, this Court lifted the stay and set a new briefing schedule. ECF No. 35. Defendant filed an Amended Motion for Summary Judgment on August 30, 2024. Def.'s Mot. Plaintiff filed a Response and Cross-Motion for Summary Judgment on October 31, 2024. Pl.'s Mot. On December 6, 2024, Defendant filed a Response and Reply. Def's Reply, ECF No. 40. Plaintiff filed a Reply on January 10, 2025. Pl.'s Reply, ECF No. 41. The Court held oral argument on February 26, 2025. *See* Certified Tr. of Proc. (hereinafter "Tr."), ECF No. 44. The parties' summary judgment motions are now fully briefed.

## IV.    Legal Standards

### A.    Summary Judgment

"[S]ummary judgment is appropriate where the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Virgin Islands Port Authority v. United States,* 922 F.3d 1328, 1333 (Fed. Cir. 2019). *See also* Rules of the Court of Federal Claims ("RCFC"), Rule 56. A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Id.* "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48.

After adequate time for discovery, the Court must enter summary judgment upon motion "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (interpreting the analogous Rule 56 in the

Fed. R. Civ. Proc.). *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (holding that summary judgment is warranted when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party"). "Cases involving only questions of law are particularly appropriate for summary judgment." *Butler v. United States,* 139 Fed. Cl. 617, 625 (2018) (citing *Dana Corp. v. United States*, 174 F.3d 1344, 1347 (Fed. Cir. 1999)).

On cross-motions for summary judgment, the Court "must evaluate each party's motion on its own merits, taking care to draw all reasonable inferences against the party whose motion is under consideration, or otherwise stated, in favor of the non-moving party." *Beres v. United States,* 104 Fed. Cl. 408, 419 (2012) (citing *First Commerce Corp. v. United States*, 335 F.3d 1373, 1379 (Fed. Cir. 2003), *reh'g and reh'g en banc denied*). *See also Butler,* 139 Fed. Cl. at 625. "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987).

### B.     Equal Pay Act

The EPA applies to both private sector and federal government employees.  29 U.S.C. § 203(e)(1), (2).  *See also Molden v. United States*, 11 Cl. Ct. 604, 609 (1987).  It dictates:

> No employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions. . . .

29 U.S.C. § 206(d)(1).  However, the EPA permits an employer to justify a wage disparity between sexes pursuant to: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex."  *Id.*  The fourth exception is also called the "catchall" exception.  *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974); *Boyer*, 97 F.4th at 841.  "The Equal Pay Act is broadly remedial, and it should be construed and applied so as to fulfill the underlying purposes which Congress sought to achieve."  *Corning Glass Works,* 417 U.S. at 208.

### 1.     Burden Shifting under the EPA

To establish a prima facie case under the EPA, a plaintiff has the initial burden to "show that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'"  *Id.* at 195 (quoting 29 U.S.C. § 206(d)(1)).  A prima facie case does not require "proof of intentional discrimination."  *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 640 (2007), *superseded by statute on other grounds,* Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5.

If a plaintiff successfully carries this burden, then "the burden shifts to the employer to show that the differential is justified under one of the Act's four exceptions." *Corning Glass Works*, 417 U.S. at 196; *see also* 29 U.S.C. § 206(d)(1). "The burden on an employer to establish an affirmative defense is 'a heavy one.'" *Cooke v. United States*, 85 Fed. Cl. 325, 342 (2008) (quoting *Mansfield v. United States*, 71 Fed. Cl. 687, 693 (2006)), *appeal dismissed*, 352 F. App'x 429 (Fed. Cir. 2009). The Equal Pay Act does not demand equal pay between sexes in all instances, but it does require an employer to establish that any wage differential is not based on sex. 29 U.S.C. § 206(d)(1).

To succeed, "[a]n employer must prove that the gender-neutral factor identified is indeed *the* factor causing the wage differential in question." *Behm v. United States*, 68 Fed. Cl. 395, 400 (2005). In other words, "the employer must establish that the gender-neutral factor it identified is *actually* the factor creating the wage differential." *Cooke*, 85 Fed. Cl. at 350 (emphasis added). "[I]t is not enough that 'the employer's proffered reasons *could* explain the wage disparity'"; rather "[i]t is necessary that 'the proffered reasons *do in fact* explain the wage disparity.'" *Boyer*, 97 F.4th at 844 (quoting *Riser v. QEP Energy*, 776 F.3d 1191, 1198 (10th Cir. 2015)). There must be "evidence that the nondiscriminatory reason *actually* motivated the decision to set unequal pay." *Id.*

Finally, a plaintiff may counter an affirmative defense under the EPA "by producing evidence that 'the reasons the employer seeks to advance are actually a pretext for sex discrimination.'" *Moorehead v. United States*, 88 Fed. Cl. 614, 624 (2009) (quoting *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 526 (2d Cir. 1992)). If the employer's reason for "'a pay difference is shown to be pretextual, the affirmative defense fails.'" *Id.* (quoting *Kouba v. Allstate Ins.*, 691 F.2d 873, 876–77 (9th Cir. 1982)). *See also Thomas v. United States*, 86 Fed. Cl. 633, 641, *aff'd*, 351 F. App'x 433 (Fed. Cir. 2009) (requiring "specific allegations of fact" to "undermine the affirmative defense established by the government").

## 2.     Permissible Reliance on Prior Pay Under *Boyer*

In *Boyer,* the Federal Circuit decided whether "reliance on prior compensation standing alone" constituted an "affirmative defense to a prima facie case" under the EPA's catchall exception. *Boyer,* 97 F.4th at 838. Considering approaches taken by other Circuit courts, the Federal Circuit settled on the "middle ground" approach followed by the U.S. Courts of Appeals for the Sixth, Tenth, and Eleventh Circuits. *Id.* at 844.

*Boyer* held the "EPA prohibits reliance on prior pay unless (1) the prior pay itself is not based on sex, or (2) an additional permissible factor 'other than sex' is present to assure a factfinder that the 'other factor' of prior pay is indeed 'other than sex' (i.e., not a proxy for sex)." *Id.* at 843. In other words, an employer may only rely on prior pay if the "prior pay is unaffected by sex-based pay differentials or . . . is considered together with other, non-sex-based factors." *Id.* at 845.

First, an employer can rely on prior pay alone if it "can establish that prior pay was not based on sex." *Id.* at 844. It has the burden to show that the prior pay "does not reflect sex discrimination." *Id.* at 845. "As the party with the burden of proof, the employer is not entitled

to simply assume that prior pay is unrelated to (or 'other than') sex." *Id.* An employer must show "that the prior pay is a 'non-sex-based' justification . . . [to] carry the affirmative defense." *Id.* (citing *Moore v. United States*, 66 F.4th 991, 996 (Fed. Cir. 2023) (en banc)). This burden never shifts back to the plaintiff. *See id.* at 844–45. The Federal Circuit left it to "future cases to consider what evidentiary showing is needed to carry this burden." *Id.* at 844.

Second, an employer can consider prior pay contemporaneously with "at least one other permissible factor, for example experience or education." *Id.* at 841, 849. The *Boyer* court reasoned that the "concern about relying on prior pay standing alone in the case of female hires is that prior pay might be artificially reduced by prior sex discrimination such that the prior pay would be lower than that for the male comparator and its consideration would improperly justify a lower starting salary for an equally qualified female hire." *Id.* at 842. Reliance on "prior salary without consideration of other factors can allow behavior to persist that is 'antithetical to the language and purpose of the EPA.'" *Id.* at 844 (quoting Jennifer Safstrom, *Salary History and Pay Parity: Assessing Prior Salary History as a "Factor Other Than Sex" in Equal Pay Act Litigation*, 31 Yale J.L. & Feminism 135, 139 (2019)). But "[i]f there are other differences between the two that are truly considerations unrelated to sex (education, work experience, recommendations, etc.) that favor the male comparator, it is likely that these same differences could explain any prior pay gap as well." *Id.* at 842. And "[u]nder these circumstances, the employer can properly rely on educational, experience, or other legitimate, non-sex-based differences and prior pay together." *Id.* However, even if "a bona fide business reason other than prior pay played a role in the differential," the employer still must show "how prior pay *together* with [that] bona fide business reason explains the differential" and whether the employer "relied on prior pay alone when *creating* a wage disparity." *Id.* at 849 (emphasis added).

### 3. Statute of Limitations

The statute of limitations for EPA claims is usually two years but three years if a violation is "willful." 29 U.S.C. § 255(a). The statute of limitations period begins when the claim accrues. *Id.* For EPA claims, a separate cause of action accrues each time the employee receives a paycheck. *Santiago v. United States*, 107 Fed. Cl. 154, 159 (2012). A willful violation "means a violation in circumstances where the agency knew that its conduct was prohibited by the Act or showed reckless disregard of the requirements of the Act." 5 C.F.R. § 551.104. *See also McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (defining the relevant inquiry as whether "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute").

"Reckless disregard" means "failure to make adequate inquiry into whether conduct is in compliance with the Act." 5 C.F.R. § 551.104. *See also Santiago*, 107 Fed. Cl. at 160 (quoting *Alvarez v. IBP, Inc.*, 339 F.3d 894, 908–09 (9th Cir. 2003)) ("[T]he three-year term can apply where an employer disregarded the very possibility that it was violating the statute . . . ."). "If an employer acts unreasonably, but not recklessly," the employer's action should not be considered willful. *McLaughlin*, 486 U.S. at 135 n.13. *See also Bull v. United States,* 479 F.3d 1365, 1379 (Fed. Cir. 2007). "Unfair or even unreasonable actions by the HR staff do not . . . rise to the

level of reckless disregard," and "willfulness requires more than an employer merely knowing that the EPA 'was in the picture.'" *Alston v. United States*, 174 Fed. Cl. 177, 185 (2024) (quoting *McLaughlin*, 486 U.S. at 134). "[P]resumed awareness of the applicability of the Act" does not necessarily result in a willful violation. *Santiago*, 107 Fed. Cl. at 160. This Court has held that a violation may be "willful" and show "reckless disregard" when an agency ignores "repeated complaints" about a pay issue or fails to "make adequate inquiry into whether conduct complies with the EPA." *Cooke*, 85 Fed. Cl. at 352. The plaintiff bears the burden of proving willfulness. *Santiago*, 107 Fed. Cl. at 158–59.

## V. Discussion

### A. The Postal Service Has Not Waived Its Ability To Raise Any Affirmative Defense.

As a preliminary matter, Plaintiff contends that Defendant has waived its ability to raise the EPA's catchall affirmative defense that "any other factor other than sex" justified the wage disparity because it did not raise this defense in its Answer. Pl.'s Mot. at 22. *See generally* RCFC Rule 8 (explaining that a defendant generally must explicitly state any affirmative defenses in their response). However, the failure to raise an affirmative defense in a responsive pleading does not necessarily result in waiver. *See Shell Oil Company v. United States,* 123 Fed. Cl. 707, 719 (2015) (citation omitted); *Entergy Nuclear Fitzpatrick, LLC v. United States,* 93 Fed. Cl. 739, 746 (2010). "In general, a court may allow a non-pled affirmative defense to be raised if it would not result in prejudice to the party." *City of Gettysburg v. United States*, 64 Fed. Cl. 429, 449 (2005).

Here, Ms. Urban has not shown this affirmative defense is prejudicial. She was given adequate notice of Defendant's intent to use the defense and has been able to respond in both her briefing and at oral argument. *See Borovicka v. United States*, 168 Fed. Cl. 534, 540 (2023), *appeal docketed*, No. 24–1429 (Fed. Cir. 2024). The Postal Service put Ms. Urban on notice of its intent to use the affirmative defense when it answered an interrogatory by stating it would be "raising the affirmative defense that the difference in salary between plaintiff and the two comparators . . . is due to factors other than sex." App'x 2. Thus, Defendant has not waived its opportunity to raise the EPA's catchall affirmative defense.

### B. The Postal Service Fails To Carry Its Affirmative Defense that Any Factor Other Than Sex Justifies the Wage Disparity.

Defendant concedes that Ms. Urban has pled a prima facie case of wage disparity under the EPA, and it raises the affirmative defense that the disparity is based on "any other factor other than sex." Def.'s Mot. at 20 (invoking the EPA's catchall affirmative defense). The Postal Service does not raise the separate seniority affirmative defense. *See id. See also* Def.'s Reply at 6; Pl.'s Mot. at 9; Pl.'s App'x to Reply to Cross-Mot. for Summ. J. (hereinafter "Pl.'s Reply

App'x") 451–52 (including an email exchange between Plaintiff's counsel and Defendant where Defendant states it is not raising the seniority affirmative defense), ECF No. 41-1.[3]

The parties dispute whether the Postal Service relied on Ms. Urban's prior pay alone when it set her promotional pay and justified the resulting wage disparity. As noted, the "EPA prohibits reliance on prior pay" with two exceptions. *Boyer*, 97 F.4th at 843. Either "the prior pay itself is not based on sex," or "an additional permissible factor 'other than sex' is present to assure a factfinder that the 'other factor' of prior pay is indeed 'other than sex' (i.e., not a proxy for sex)." *Id.* at 843. Put differently, "prior pay is considered together with other, non-sex-based factors." *Id.* at 845.

Defendant fails on both grounds. First, it is uncontroverted that the Postal Service never inquired into whether Ms. Urban's prior pay was based on sex. *See, e.g.,* App'x 44. Nor did it rely on any finding that her prior pay was not based on sex at the time of her promotion. Second, Defendant used Ms. Urban's prior pay alone to justify the wage disparity, instead of relying on prior pay together with non-sex-based factors. Therefore, Defendant fails to meet its burden to show that Ms. Urban's prior pay was not simply a proxy for her sex.

### 1.    Defendant Failed To Inquire Into Whether Ms. Urban's Prior Pay Was Based on Sex and Did Not Rely on Any Such Justification.

An employer can rely on prior pay alone as a "factor other than sex" if the employer demonstrates that the "the prior pay itself is not based on sex." *Boyer,* 97 F.4th at 843. While Defendant must be "provided an opportunity to attempt to prove" it relied on prior pay because it was not based on sex, such a justification must have "*actually* motivated the decision to set unequal pay" at the time. *Id.* at 844, 849. Defendant cannot for the first time in litigation offer evidence that the prior pay was not based on sex as a "post hoc nondiscriminatory reason" for the wage disparity. *Id.* at 844.

Here, the Postal Service has not established that it made any inquiry into whether Ms. Urban's prior pay was based on sex at the time of her promotion. Defendant does not contend that the wage disparity was justified because Ms. Urban's prior salary was not based on sex. Mr. Colón testified that while he used Ms. Urban's prior salary to set her new salary, he did not know if Ms. Urban's salary before her promotion was based on sex. App'x 44. He stated that he "had no dealings with her prior salary." *Id.* He did not consider whether Ms. Urban left the workforce after the birth of her two children, whether she stayed out of the workforce or worked part time to care for her children, or whether any of these factors might have affected her prior salary. *Id.* And Mr. Colón conceded that he would not be able to say that Ms. Urban's prior salary was a factor other than sex. *Id.* Similarly, Ms. Clarke did not claim to know whether Ms. Urban's prior salary was unaffected by sex discrimination when she approved Mr. Colón's salary recommendations. *See* App'x 302–05. Ms. Clarke only stated that Ms. Urban's promotional salary was "based on HR policy and her salary at the time of the offer." App'x 303.

---

[3] Plaintiff's Reply Appendix refers to the document Plaintiff filed with her Reply.

The Postal Service offers the post-hoc rationale, raised for the first time in this litigation, that the pay calculator "compl[ies] with *Boyer* in that 'the prior pay is unaffected by sex-based pay differentials.'" Def.'s Reply at 3–4 (citing *Boyer*, 97 F.4th at 845). In support of this supposition Defendant makes two unconvincing arguments.

First, Defendant argues that because the Postal Service's pay calculator uses prior federal pay as an input, any discriminatory influences on prior pay are minimal. *Id.* Defendant cites a recent Office of Personnel Management ("OPM") regulation that states "[b]ecause structured pay systems minimize discriminatory influence on pay setting, OPM is not banning consideration of prior Federal pay when setting pay but is requiring agencies to establish policies that further promote equity in pay setting." *Id.* at 3 (quoting *Advancing Pay Equity in Governmentwide Pay Systems,* 89 Fed. Reg. 5737, 5740 (Jan. 30, 2024) (hereinafter "*Advancing Pay Equity*")). This is not sufficient under the EPA. Even if structured pay systems may generally "minimize discriminatory influence on pay setting," it does not follow that Ms. Urban's prior pay was not discriminatory.

There is no evidence that this pay system actually prevents discrimination. The Postal Service admitted that it made no inquiry into its compliance with the EPA when it designed the current pay system. Pl.'s App'x 396 (including supplemental 30(b)(6) deposition response). Indeed, the same OPM regulation recognizes that "setting pay based on a candidate's salary history could perpetuate a pay rate that [is] inequitable." *Advancing Pay Equity,* 89 Fed. Reg. at 5748. The regulation is not evidence that Ms. Urban's prior pay was untainted by sex discrimination, nor does it inform whether the Postal Service relied on benign factors when setting Ms. Urban's promotional pay. And, in any event, this regulation was issued after Mr. Colón set Ms. Urban's salary.

Second, Defendant contends that the reasons for Mr. Paulino's and Mr. Miller's higher prior salaries "*may* include [their] longer experience at the Post Office." Def.'s Reply at 6 (emphasis added). But the Postal Service does not provide any evidence for this supposition. More importantly, Defendant never establishes that Ms. Urban's prior pay was *not* the result of sex discrimination or that it relied on this justification when it set her promotional pay. *See* Def.'s Reply at 3–4.

Defendant improperly attempts to shift its burden to carry its affirmative defense to Ms. Urban, arguing that she has not shown that her prior pay was lower because she was a woman. *See* Def.'s Reply at 3. It states:

> Ms. Urban does *not* argue that she was incorrectly "slotted" with her initial conversion from collective bargaining to her non-union position . . . [or] that the *initial* setting of her pay at the Postal Service is a product of gender discrimination . . . and she does not allege that her prior pay at the Postal Service *before* applying to the training instructor position was lower because she is a woman.

*Id.* But it is not Ms. Urban's burden to prove that her prior pay was based on sex. Defendant bears the burden to carry its affirmative defense and prove that Ms. Urban's prior pay was *not* based on sex. *Boyer,* 97 F.4th at 844–45 ("Consistent with the characterization as an affirmative

defense, the Supreme Court, our court, and every circuit have concluded that the employer bears the burden of establishing the factual premises underlying the affirmative defense.") (citing *Corning Glass Works,* 417 U.S. at 196).  The Postal Service has failed to meet its burden to show it relied on a finding that Ms. Urban's prior pay was not based on sex and cannot shift this burden to Ms. Urban.

### 2.    Defendant Relied on Ms. Urban's Prior Pay Alone To Justify the Wage Disparity.

The Postal Service also fails to show that it relied on Ms. Urban's prior pay together with another permissible factor to "justif[y]" the "pay differential." *Id.* at 845.  The record contains repeated statements by both Mr. Colón and Ms. Clarke citing prior pay as the reason Ms. Urban received a lower salary than her male counterparts.  They attest the Postal Service offered Ms. Urban the maximum wage that her prior salary permitted.  *See* App'x 42 (Mr. Colón testifying that the reason he offered "[Ms.] Urban less than the two males for doing the same job" was "based on their current salary"); 205 (Mr. Colón acknowledging that the "key factor" explaining the wage differential "is the salary of the individuals at the time of their promotions"); 291 (Mr. Colón's affidavit stating that he "called [Ms. Urban] and made the offer explaining that the proposed salary was the maximum allowable under policy"); 303 (Ms. Clarke's affidavit indicating that Ms. Urban "was afforded the maximum amount allowed based on HR policy and her salary at the time of the offer").

Importantly, the Postal Service's pay calculator set Ms. Urban's maximum permissible salary based *solely* on her prior pay.  *See* App'x 41, 44, 48.  While the pay calculator's second factor can also consider a jump in EAS pay grades, pay grades are merely salary ranges.  App'x 88, 113.  And Defendant conceded that in Ms. Urban's case, the only factor that influenced her maximum promotional salary was her prior pay.  Tr. at 22 (Defendant stating that for Ms. Urban, only "prior pay was the input for the calculator").  In other words, prior pay alone "*actually* motivated the decision to set unequal pay," *Boyer* 97 F.4th at 844, and was "*the* factor causing the wage differential in question." *Behm,* 68 Fed. Cl. at 400.  Defendant's attempt to defend its decision by stepping away from its reliance on prior pay is unavailing.

### a.    Defendant's "Prior Pay Plus" Argument Does Not Negate that the Postal Service Justified the Pay Disparity Based on Prior Pay Alone.

Defendant contends that *Boyer* permits a "prior pay plus" approach, although this term does not appear in the *Boyer* decision.  Def.'s Mot. at 22 (citing *Boyer,* 97 F.4th at 845); Tr. at 14 (citing only to a dissenting opinion in the denial of the rehearing en banc).  Defendant asserts the promotional pay policy aligns with this "prior pay plus" approach because Mr. Colón relied on factors other than prior pay to set Ms. Urban's final salary *after* the pay calculator set a ceiling on her salary (absent an exception).  Def.'s Mot at 22; Tr. at 19 (Defendant contending that Mr. Colón set Ms. Urban's salary "to the highest he thought he could" based on the pay calculator).  Defendant argues that "[a]lthough the promotional pay policy incorporates prior pay in computing the percentage of salary increase, the selecting official also considers other, non-sex-based factors when recommending pay within the resulting percentage range."  Def.'s

Mot at 3. This is not enough to meet Defendant's heavy burden of demonstrating that prior pay alone did not "explain the wage disparity" or that prior pay alone was not used to "justify" the pay differential. *Boyer*, 97 F.4th at 849. Mr. Colón only considered other factors, including Ms. Urban's experience, *after* determining the permissible pay range. These other factors were considered entirely separately from prior pay. There is also no evidence indicating her prior pay was "not a proxy for sex." *Id.* at 843.

The promotional pay calculator set Ms. Urban's highest permissible salary at $63,998. App'x 130. This was $8,264 and $17,619 less than the minimum permissible salaries Mr. Paulino and Mr. Miller could receive for the same position, respectively. App'x 130, 145, 157. Thus, the pay calculator created a ceiling under which Ms. Urban was stuck even if Mr. Colón found Ms. Urban's experience to be superior or equivalent to that of her male counterparts. *See* Pl.'s Reply at 12; Tr. at 29 (Plaintiff arguing that the maximum permissible salary created "an anchor that meant [Ms. Urban] wasn't going to ever get up over that hurdle" and that she "was never going to catch up" to her male counterparts' salaries).

Importantly, Mr. Colón assessed that Ms. Urban was more qualified than Mr. Paulino, but he still recommended she receive a lower wage based *solely* on her prior pay. *See* App'x 42, 57. Mr. Colón determined that Ms. Urban had significant relevant experience. App'x 47. Thus, he recommended what he mistakenly thought was the highest permissible salary increase. *Id.* In contrast, Mr. Colón found that Mr. Paulino "did not have a very robust background in terms of in person facilitation." *Id.* Mr. Colón, therefore, proposed Mr. Paulino receive less than the maximum salary. *Id.* Defendant is correct that the Postal Service did not have to pay Ms. Urban the same as her male counterparts. *See* Tr. at 20 (Defendant arguing that "the *Boyer* court never said the end result has to be pay parity"). But the facts show the Postal Service did not "actually rel[y] on specific differences in experience or credentials that were material to the work being performed" to justify the wage disparity. *Boyer,* 97 F.4th at 849. Rather, the Postal Service relied on prior pay alone, even when Ms. Urban was more qualified than a male counterpart.

There is also no evidence the Postal Service considered "prior pay together with another bona fide business reason." *Id.* at 849. In *Boyer,* "salary setting was 'an algorithm' that took several factors, including years of service and publications, into account." *Id.* Thus, the court found there was a factual dispute about whether the employer relied on prior pay alone. *Id.* Here, the Postal Service considered only Ms. Urban's prior pay separately from any other factors, and this determined her maximum salary. Mr. Colón's evaluation of Ms. Urban's experience after the pay calculator set a ceiling may have reduced the largest possible wage disparity between Ms. Urban and Mr. Paulino. But that does not mean setting the ceiling based solely on her prior pay was permissible under the EPA. *See, e.g., Riser,* 776 F.3d at 1198 (finding that the use of a factor other than sex used together with prior pay that accounts for "at most" a portion of the wage disparity but "nowhere near the full amount" is not sufficient for a defendant to carry its affirmative defense). The pay calculator's determination of Ms. Urban's maximum permissible pay at the time of promotion was an anchor that made it impossible for her to match her male counterparts' pay. And this was so even though Mr. Colón determined she was demonstrably more qualified than at least one of the men. App'x 42, 47.

### b. Defendant Cannot Resurrect the Waived Seniority Defense.

Although Defendant expressly waived the EPA's seniority affirmative defense, it argues that the pay calculator implicitly relied on factors other than sex because Ms. Urban's male counterparts' higher prior pay is the result of the men's longer tenure at the Postal Service. Def.'s Reply at 6 ("Mr. Paulino and Mr. Miller began working at the Postal Service in 1997 and 1978 . . . seven years and 26 years longer than Ms. Urban . . . [which] accounts for why their prior pay was higher."); Pl.'s Reply App'x 451. But the Postal Service did not offer any such reasoning at the time of their promotion. Mr. Colón testified that he did not enter the number of years that either Ms. Urban or her male counterparts had worked at the Postal Service into the pay calculator:

> [Counsel for Defendant:] What effect does enter on duty have on you inputting the numbers into the commercial pay calculator?

> [David Colón:] The enter on duty date does not have any setting on it itself. Because I'm looking at what their current salary is.

> [Counsel for Defendant:] So you're not considering – you don't consider seniority or how long a person has been at the Postal Service?

> [David Colón:] No, that is not a factor.

App'x 49. *See also* Pl.'s Reply App'x 452 (documenting an email from the Postal Service stating: "[t]he salaries of Postal Service Executive and Administrative Schedule (EAS) employees (non-bargaining unit employees) are not based on seniority").

And while Mr. Colón attested during the EEO investigation that "Mr. Paulino has 40 years of service compared to complainants [sic] 11 years" and "Mr. Miller has been in the EAS ranks longer than complainant," these facts did not play a part in the pay calculator's determination of permissible salaries or in any adjustments Mr. Colón made. App'x 289, 295. The Postal Service cannot resurrect the seniority affirmative defense it expressly waived. *See Wood v. Milyard*, 566 U.S. 463, 471 n.5 (2012) (explaining that "a federal court has the authority to resurrect only forfeited defenses," not waived defenses); Def.'s Reply at 6 ("[W]e do not argue that the pay calculator itself is based on seniority."). More importantly, there is no evidence that the Postal Service "justified" the wage disparity based on length of tenure. *Boyer*, 97 F.4th at 845.

### c. Even a Bona Fide, Gender-Neutral Pay Policy Cannot Rely on Prior Pay Alone To Justify a Pay Disparity.

Defendant further argues that the promotional pay calculator is not based on sex since it is bona fide, gender-neutral, used nationwide, and "furthers a business purpose of the Postal Service by having a uniform method for selecting officials to use in promotions." Def.'s Mot. at 23. The EPA's catchall affirmative defense stems from "a concern that bona fide job-evaluation systems used by American businesses would otherwise be disrupted." *Boyer*, 97 F.4th at 843–44 (quoting *Washington Cnty. v. Gunther*, 452 U.S. 161, 171 n.11 (1981)). But that does not permit

an employer to rely on prior pay alone to justify a wage discrepancy. While "there may be legitimate reasons to consider prior salary," relying on "prior salary without consideration of other factors can allow behavior to persist that is antithetical to the language and purpose of the EPA." *Id.* at 844 (quotation marks and quotation omitted). Defendant still bears the burden of showing that prior pay is "not a proxy for sex." *Id.* at 843. Defendant fails to do so here.

Defendant inaptly relies on *Moorehead* as an analogous example of this Court finding an employer carried the EPA's catchall affirmative defense based on the use of a gender-neutral pay policy. Def.'s Mot. at 21. In that case, this Court held the Transportation Safety Administration ("TSA") permissibly relied on a gender-neutral standardized evaluation system when setting pay. *Moorehead*, 88 Fed. Cl. at 624. But the gender-neutral evaluation system in *Moorehead* did not consider prior pay alone. *Id.* at 622. Instead, TSA's evaluation system was based on five criteria that included experience and education. *Id.* This Court has also found that pay systems which rely on factors beyond prior pay comply with the EPA. *See Behm,* 68 Fed. Cl. at 398, 409 (finding a pay plan based on the location where an employee was assigned complied with the EPA); *Lissak v. United States,* 49 Fed. Cl. 281, 285 (2001) (finding a reverse seniority system complied with the EPA). Defendant could not point to any case where a court found a system akin to the Postal Service's promotional pay calculator complied with the EPA. *See* Tr. at 25.

In sum, Defendant has failed to carry its affirmative defense that "any other factor other than sex" explains the wage disparity between Ms. Urban and her male counterparts. 29 U.S.C. § 206(d)(1). There is no genuine dispute as to any material fact about whether the Postal Service relied on prior pay alone to justify the wage disparity. The Postal Service's use of its pay calculator, as it is currently employed, runs afoul of the EPA. Thus, the Court does not need to reach the parties' arguments on pretext.

## C.     The Court Declines To Determine at Summary Judgment Whether the Postal Service Willfully Violated the EPA.

Ms. Urban alleges in her Complaint that the Postal Service violated the EPA "willfully, with knowledge of the consequences, and malice aforethought." Compl. at 5. Ms. Urban also claims the Postal Service acted in "bad faith" because it "had no reasonable grounds to believe it was not violating the Equal Pay Act when it compensated Miller and Paulino at a greater rate for work substantially identical to that performed by Plaintiff." *Id.* Defendant contends that Ms. Urban fails to allege a willful violation. Def.'s Mot. at 30.

A willful violation "means a violation in circumstances where the agency knew that its conduct was prohibited by the Act or showed reckless disregard of the requirements of the Act." 5 C.F.R. § 551.104. "Reckless disregard" means "failure to make adequate inquiry into whether conduct is in compliance with the Act." *Id. See also Cooke*, 85 Fed. Cl. at 352 (finding a violation may be "willful" and show "reckless disregard" when an employer fails to "make adequate inquiry into whether conduct complies with the Equal Pay Act"). Plaintiff bears the burden of proving willfulness. *Santiago*, 107 Fed. Cl. at 158–59. "If an employer acts unreasonably, but not recklessly," the employer's conduct does not rise to willfulness. *McLaughlin*, 486 U.S. at 135 n.13. Ultimately, whether an employer "acted recklessly, as

opposed to unreasonably, is a question of *fact*." *Bull*, 479 F.3d at 1379 (emphasis added). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other." *Mingus Constructors,* 812 F.2d at 1391.

Willfulness is a close call in this case. Plaintiff has presented convincing evidence that the Postal Service failed to make an "adequate inquiry" into its compliance with the Act. But while there is evidence of unreasonable conduct, without a trial the Court cannot establish whether the Plaintiff has met her burden to prove recklessness.

### 1. The Postal Service's Inquiry into the EPA During the 2015 Promotional Pay Policy Revisions

Plaintiff provides evidence that Defendant showed "reckless disregard" for the EPA's requirements by failing to make an adequate inquiry into the EPA when it developed the promotional pay calculator. Pl.'s Mot. at 28–30. *See also* Compl. at 5 (contending Defendant "had no reasonable grounds to believe it was not violating the Equal Pay Act"). Plaintiff offers the Postal Service's testimony that it conducted *no* assessment into the EPA when it made changes to the non-bargaining pay policies, including creating the pay calculator. Pl.'s App'x 396 (documenting a 30(b)(6) deposition response where the Postal Service admits that "at the time revisions were made . . . there was *no* assessment regarding the Equal Pay Act") (emphasis added); App'x 65 (documenting a 30(b)(6) deposition response where the Postal Service's witness stated she reviewed "references and documentation as to why the policy was put into place and the purpose of it" and confirmed that "none of the things [she] looked at mentioned [the] Equal Pay Act").

Defendant's argument that this does not demonstrate willfulness is dubious. Def.'s Reply at 19. Defendant contends that since the Postal Service engaged in a comprehensive review involving various stakeholders prior to implementing revisions to its pay policies, the Postal Service's reliance on the pay calculator was not a willful violation of the EPA. Def's Reply at 19–20 (citing App'x 63–65, 90–109). However, the record does not contain any evidence that this stakeholder review involved any inquiry, let alone an "adequate inquiry," into the EPA. App'x 63–65, 90–109. *But see* Tr. at 65–67 (Defendant contending that the 30(b)(6) deposition about its assessment of the EPA involved "inquiries getting into legal opinions and . . . that wasn't something that [it] could provide").

Defendant argues that Plaintiff's willfulness claim fails because in 2015 "there was no settled authority in the Federal Circuit as to the extent to which prior pay could be used in setting pay for internal Postal Service hires." Def.'s Reply at 19 n.5. The Federal Circuit did not decide until 2024 that relying on prior pay alone was impermissible, several years after the Postal Service revised the promotional pay policy. Plaintiff correctly notes that the Equal Employment Opportunity Commission had guidance in place when the Postal Service developed the 2015 pay calculator. Pl.'s Mot. at 28. This guidance stated "[p]rior salary cannot, by itself, justify a compensation disparity." EEOC Compliance Manual, Section 10, Compensation Discrimination. But there was a circuit split about whether reliance on prior pay alone was permissible under the EPA at the time of the 2015 revisions. The U.S. Court of Appeals for the

Seventh Circuit had held that prior pay alone can justify differential treatment while, as discussed above, the Sixth, Tenth, and Eleventh Circuits had found that an employer cannot rely solely on prior pay to justify a wage disparity. *Compare Wernsing v. Dep't of Hum. Servs., State of Ill*., 427 F.3d 466, 469 (7th Cir. 2005) *with Balmer v. HCA, Inc*., 423 F.3d 606, 612 (6th Cir. 2005), *abrogated on other grounds by Fox v. Vice*, 563 U.S. 826, 832 (2011); *Irby v. Bittick*, 44 F.3d 949, 955–56 (11th Cir. 1995); *Riser,* 776 F.3d at 1199.

Still, it stands to reason that a failure to make any inquiry *at all* into whether the pay calculator complies with the EPA cannot support a good-faith assumption that it does—only a reckless one. The Supreme Court has held that "a completely good-faith but incorrect assumption that a pay plan complied with" the relevant law cannot by itself demonstrate willfulness. *McLaughlin*, 486 U.S. at 135. The Postal Service states the entire purpose of the revisions "was to prepare equitable pay," App'x 62, which means it understood and was on notice that equitable pay was an issue. Yet it admits to having entirely "failed to investigate the Equal Pay Act's requirements." *Cooke,* 85 Fed. Cl. at 353. *See* Pl.'s App'x 396.

If the Postal Service engaged in any inquiry into the EPA, it may have concluded erroneously—but in good faith—that the pay calculator complied with the EPA. Here, there is evidence the Postal Service showed reckless disregard for the Act by making no inquiry at all. But Defendant's testimony that "there was no assessment regarding the Equal Pay Act" appears in a single line in a written supplemental 30(b)(6) deposition. Pl.'s App'x 396. A trial is necessary to resolve whether the Postal Service made an "adequate inquiry" into the EPA when it designed the pay calculator and whether the Postal Service "acted recklessly, as opposed to unreasonably." *Bull*, 479 F.3d at 1379.

### 2.    The Postal Service's Inquiry into the EPA in Ms. Urban's Case

Second, Plaintiff has presented evidence that Mr. Colón and his superiors showed reckless disregard for the EPA when they raised no concerns about the proposed salaries for Ms. Urban and her male counterparts. Having failed to assess the EPA when it created the pay calculator, Defendant had the opportunity to investigate compliance when confronted with the obvious wage disparity in Ms. Urban's case. She raised concerns on numerous occasions and also filed an EEO complaint, all of which were instances when the Postal Service could have acted to remedy the wage disparity. Appx 25–26 (Ms. Urban testifying she told Mr. Colón that she felt she "wasn't slotted in properly" when she moved onto the EAS scale and was "looking for proper compensation for the position" because she was "at a very low end of the scale for EAS"); App'x 30, 174–373 (EEO Complaint). Defendant correctly notes that the Postal Service did promptly investigate Ms. Urban's EEO complaint once filed. Def.'s Reply at 17 (citing App'x 174–373).

Mr. Colón testified he was aware of the EPA when he set Ms. Urban's salary but stated he did not have any concern about violating the Act because he recommended salaries "based on [the] Postal Service pay policies." App'x 42–43. He also testified that he wanted to do what he could within his control to address Ms. Urban's low salary and did not know he could request an exception to the 10% maximum set by the pay calculator—even though he testified that he had

reviewed and was familiar with the document containing the exception policy. App'x 41, 47, 51, 56, 264. And Mr. Colón knew that Ms. Urban was at least as qualified as Mr. Miller and more qualified than Mr. Paulino, as evidenced by the rationale he used to determine their final salaries after setting the permissible salary ranges using the pay calculator. App'x 47. Based on these facts, the Court cannot conclusively determine whether Mr. Colón acted willfully instead of merely unreasonably. *See Alston*, 174 Fed. Cl. at 185 ("Unfair or even unreasonable actions by the HR staff do not . . . rise to the level of reckless disregard.")

As Plaintiff correctly explains, "it is the Postal Service that has an obligation to comply with the EPA, not just Mr. Colón." Pl.'s Reply at 16. However, it is unclear whether his superiors acted willfully rather than unreasonably. There is some evidence Postal Service superiors are failing to inquire into the EPA as a matter of practice. Defendant's 30(b)(6) witness testified that "gender is looked at" in analyzing pay equity "in comparison to his or her peers." App'x 66. But the witness admitted that "if there's a scenario where a woman is making less than a man and she's doing the same job," gender is not "considered at that point." *Id.* Upon further questioning, the witness agreed that in 2016 "managers [were] allowed to ask for a raise in excess of the 10 percent allowed by the pay calculator," and "one of the reasons they asked for an increase [could be] because of concerns over a difference in salary between genders." *Id.* Yet, to the witness's recollection, a salary had never "been increased because of a concern about a difference in salary between genders." *Id.*

In Ms. Urban's case, Mr. Colón's superiors reviewed his salary recommendations and did not raise any questions or note any issues regarding a possible EPA violation. Nor did they suggest that Mr. Colón consider exercising his discretion under the policy to offer Ms. Urban a higher salary. It is undisputed that Mr. Colón's superiors understood the policy allowed exceptions to the pay calculator ranges. App'x 8, 66. Despite being on notice that Ms. Urban had raised fairness issues concerning her low salary, neither Mr. Colón, Ms. Clarke, nor any other Postal Service decision-makers sought to address the disparity. App'x 26, 32, 264. And they did not make any inquiry into the EPA before Ms. Urban raised the issue through the EEO process. *See* Tr. at 62.

During the EEO investigation, Ms. Clarke stated she concurred with the salaries based on the Postal Service policy in effect at the time, App'x 265, which she may have presumed complied with the EPA. *See generally Santiago*, 107 Fed. Cl. at 160 (rejecting argument that a finding of willfulness is justified by a defendant's "presumed awareness of the applicability of the Act"). But she likely should have known the policy was not rooted in an assessment of the EPA and that further inquiry was necessary. *See id.* (describing Ms. Clarke's testimony that she held her managerial position at the Postal Service "since July, 2011"); Pl.'s App'x 396 (admitting that "there was no assessment regarding the Equal Pay Act" for the 2015 revision to the promotional pay policies). The Court will determine at trial whether Mr. Colón's superiors willfully, rather than merely unreasonably, violated the EPA by failing to make an adequate inquiry into whether the wage disparity between Ms. Urban and her male counterparts was lawful. *See Cooke*, 85 Fed. Cl. at 353.

20

In sum, Defendant may have acted with reckless disregard for the EPA's requirements, but the Court determines a trial is necessary to fully resolve the question. While Plaintiff has offered significant evidence, willfulness "is a question of fact," and a trial is the more appropriate forum for a final determination than a summary judgment proceeding. *See Bull*, 479 F.3d at 1379. And when asked at oral argument about precedent for determining the issue at summary judgment, Plaintiff's counsel responded he "was not able to find a plaintiff's side affirmative summary judgment on . . . a willfulness issue." Tr. at 44 (acknowledging willfulness has usually "been a disputed fact that goes into trial"). Still, the evidence in the record binds the parties at trial, and Defendant will face a substantial hurdle in countering Plaintiff's claim that the evidence proves recklessness.

## VI.  Conclusion

For the foregoing reasons, Defendant's Amended Motion for Summary Judgment is **DENIED**, ECF No. 37, and Plaintiff's Cross-Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**. ECF No. 39. The parties are **ORDERED** to hold a settlement conference no later than **May 7, 2025**. If the matter cannot be resolved without further proceedings, the parties are **ORDERED** to file a joint status report proposing a schedule for further proceedings by **May 14, 2025**.

**IT IS SO ORDERED.**

        s/ Carolyn N. Lerner
        CAROLYN N. LERNER
        Judge